IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LEONARD SIMMONS,         )
                        )
       Plaintiff,      )
                        )
    v.           )    Case No. 04-4042-CV-C-NKL
                        )
JOHN HEMEYER, et al.,      )
                        )
       Defendants.    )
                        )
                        )

ORDER

Plaintiff Leonard Simmons ("Plaintiff") brings this wrongful death action under 42 U.S.C. § 1983 against Defendants John Hemeyer ("Hemeyer"), former sheriff of Cole County; Aimee Wray[1] ("Wray"), former assistant administrator of the Cole County Jail; and Cole County itself. Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 63]. For the reasons set forth below, the Motion is granted in part and denied in part.

## I.    Factual Background

A reasonable juror could believe the following facts based on the admissible evidence before the Court, resolving all disputed issues in favor of the Plaintiff as the non-moving party. Plaintiff's late wife, Denise Simmons ("Simmons"), was incarcerated

---

[1]At the time of Simmons's death, Aimee Wray had the surname of Pierce. The Court refers to her by her current surname throughout the Order to avoid confusion.

1

in the Cole County Jail in September 2002 while Hemeyer was the sheriff of Cole County, Lieutenant Russell Benboom was the jail administrator for the County, and Wray was the assistant jail administrator. At the time of her incarceration, Simmons was on the prescription drug Zyprexa for the treatment of schizophrenia. Studies have shown that Zyprexa may cause severe, permanent injuries including changes in blood glucose. As a result of taking the drug, Simmons developed diabetic ketoacidosis.

On September 24, 2002, Simmons was seen by Christy Barber, a nurse practitioner, who advised Benboom and another jail employee, Trey Propes, that Simmons should be taken off all medication for at least 24 hours and be given lots of fluids. It is unclear from the record why this action was advised by Nurse Barber. Although Benboom told jailers Matt Beffa and Stacy Hickman that Simmons was not to receive her regular medication, medical records show that she still received her medication throughout September 24 and refused them starting on the morning of September 25.

On September 25, Defendant Wray saw Simmons around 11:00 a.m. and again at 3:45 p.m. after other inmates told jailers that Simmons wasn't doing well. During their first meeting, Simmons told Wray that she was over-medicated because she had not seen her doctor while incarcerated. Wray was skeptical about this comment because inmates frequently say things that are not true. Another deputy, named Bohannan, who was nearby at the time, told Wray that Simmons had been taken off all her medication the day before by Nurse Barber. Wray asked Simmons how she could be over-medicated when

2

she had been taken off all her drugs the day before.  She asked whether Simmons had

saved her medication and taken it all at once.  Wray reminded her of a time when she had

been taken to the hospital after reporting that she had taken lots of pills.  Simmons said

she hadn't and Wray said, "That's good because we don't want to have your stomach

pumped."  Wray told Simmons that she had a history of faking illness and reminded her

of a time when she had been taken to the hospital because she said her face was paralyzed

but the doctor said she was okay and only wanted medication.  Simmons did not recall

ever having been taken to the hospital.  Wray asked Simmons what she wanted her to do

but Simmons did not respond.  Another inmate asked for a glass of milk to give Simmons,

which was provided.   Simmons did not specifically ask Wray for any medical assistance

at that time.[2]  Wray told several other jailers that Simmons was faking her illness and that

there was nothing wrong with her.

　　　　Around 3:45 that afternoon, fellow inmates called the guards because they thought

Simmons was sick.  Jailer Stacy Hickman went to see her.  Simmons looked lethargic and

was not speaking coherently.  She interrupted Wray in a staff meeting and brought her to

take another look at Simmon.  When they arrived at her cell, Simmons's lips were

shaking and she'd taken off her underwear and wouldn't put it back on.  She had wrapped

a blanket around herself and was mumbling and slurring her words.  Wray claims that

---

[2]Plaintiff offers an Inmate Request for Medical Attention form from Simmons dated either
September 23 or 25 at 9:24 a.m.  Although a reasonable juror might find that the form was dated
September 25, there is no evidence that this form was given to Wray at 11:00 a.m. or 3:45 p.m.
that day.

Simmons had done so at other times in the past and that she did not think the mumbling was unusual.

Another inmate said Simmons was very sick but Wray was skeptical. Wray told Simmons to get up and they would take her downstairs. It is unclear from the record whether "downstairs" was a place where Simmons could have seen a doctor or whether it was simply a more comfortable cell. Simmons did not move. Wray told her that if she wanted to see a doctor, she would have to get dressed and come downstairs. Two other inmates offered to help her down the stairs or at least help her get dressed. Simmons wouldn't let them help her. Wray asked her what kind of help she wanted, but Simmons only began rocking back and forth. Wray said that she would take Simmons's non-movement as refusal of medical treatment. Another inmate asked for another cup of milk because it seemed to help and it was provided. Wray told Hickman that she thought Simmons was fine, that she wasn't on any medication, that she had a history of faking illness, and that she refused to go see a doctor. Wray decided not to seek further medical treatment for Simmons because she did not believe it was necessary.

Around 6:10 that evening, evidently after Wray had left the jail, Simmons was carried down to the lower level of the jail by Hickman and Bohannan. Although she was lethargic and couldn't speak coherently, she resisted being moved. Eventually they cajoled her into being carried downstairs where the officers laid her on the floor of another cell so she wouldn't fall and hit her head. Simmons did not attempt to move to the bed. She lay on the floor. She could not sit up by herself. Hickman telephoned

4

Benboom to report that Simmons had been moved to holding cell 2 on the lower level of the jail because she could not get up and could not talk. Benboom instructed the jailers to place Simmons on a 15 minute watch to ensure that she was "breathing, not hurting herself, staying where [the jailers] could watch her." They watched her until the end of their shift, during which time she was breathing heavily and did not move very much.

From 11:00 p.m until 7:00 a.m. on September 26, the jail was staffed by Samantha Conn Coleman and Travis Owen. Coleman had been informed by Hickman when she came on duty that Simmons was in holding cell 2, that she was on a 15 minute watch, and that Benboom should be contacted if Simmons's condition worsened. Coleman and Owens observed Simmons lying on the floor of holding cell 2 throughout the night either by peering through a window or looking at her on a monitor. They were relieved by jailers Jose Perdomo and Matt Beffa at 7:00 a.m. on September 26. At around 11:20 a.m. that day, Simmons was found not breathing in holding cell 2. An autopsy revealed that she had died of pulmonary edema secondary to ketoacidosis. It is unclear from the record when during the night she actually died. Sheriff Hemeyer was not aware of Simmons's medical condition or any problems with her health until the morning of her death.

## II.     Discussion

Remaining in this suit are two counts from the Second Amended Complaint: a common law claim for wrongful death brought against Defendants Hemeyer and Wray in their individual capacities and a § 1983 claim for violating Simmons's Eighth

Amendment rights, brought against Cole County as well as Hemeyer and Wray in their individual and official capacities. Defendants move for summary judgment on all counts.

### A. 1983 Claims Against Cole County

A municipality may only be held liable under 42 U.S.C. § 1983 for constitutional violations which result from a policy or custom of the municipality. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Scheeler v. City of St. Cloud*, 402 F.3d 826, 832 (8th Cir. 2005). To show the existence of an unconstitutional policy for § 1983 purposes, the plaintiff must demonstrate "a deliberate choice to follow a course of action . . . made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (alterations and internal quotations omitted). To show the existence of an unconstitutional custom for § 1983 purposes, the plaintiff must demonstrate (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) proof that the custom was the moving force behind the constitutional violation. *Id.*

Plaintiff has produced no evidence of an official policy which resulted in Simmons's death, nor any widespread or persistent pattern of unconstitutional misconduct by Cole County employees. As of September 26, 2002, no substantiated complaints had been lodged against Wray by anyone in the Cole County Jail. There is no evidence that

6

Sheriff Hemeyer, as the Cole County Jail's chief decision maker, had any notice of any pattern of unconstitutional treatment of prisoners by Wray or anyone else in his employ. Plaintiff offers several affidavits with hearsay testimony about the goings-on in the Cole County Jail and Hemeyer's "history of ignoring constitutional violations of subordinates and engag[ing] in constitutional violations against citizens himself." Sugg. in Opp. at 10. These hearsay allegations involve illegal searches of homes, allowing jailers to have sex with inmates in exchange for cigarettes, and urging deputies to give false testimony in criminal cases. None of these allegations, even if true and supported by admissible evidence, relates in any way to the medical treatment of inmates.

Plaintiff also suggests that Cole County is liable because Hemeyer failed to train his deputies and jailers to tend to the medical needs of inmates. A failure to train officers may amount to a policy for purposes of § 1983, but such liability is limited to situations in which the County has prior notice of its officers' misbehavior and remains deliberately indifferent to it, *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank,* 245 F.3d 721, 742 (8th Cir. 2001), unless "the failure to train employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (internal quotation omitted). Plaintiff asserts that "[t]he record is replete with ineffective policy and procedure in the Cole County Jail and the failure of Defendant Hemeyer to train subordinates and/or enforce the policies that he did have in place." Sugg. in Opp. at 19. He advances the following examples without specific reference to any evidence or exhibits:

7

a) Policy and practice in the jail called for sick call visits one time per week, which could result in the inability of inmates to obtain medical treatment for up to a week. Hemeyer was aware of the need for daily medical access by the inmates.

b) jailers did not have the authority to call for off-site medical providers, or if they did have such authority, they were unaware of it.

c) the jail had an inadequate policy and practice of implementation of medical directives by medical staff, evidenced by Simmons continuing to be offered medication after it was cancelled by medical staff, and jailers failing to "force liquids" on Simmons as direct by medical staff.

d) no training of jailers regarding dealing with the medical needs of inmates.

e) Defendant Wray's complete unawareness that a policy even existed regarding the medical treatment of inmates, or an incorrect belief as to what the policy called for.

f) failure to implement the policy regarding collection of medical complaints for daily review by the Sheriff led to him being completely unaware of the medical needs of Simmons.

*Id.* at 19-20. Plaintiff asserts that "these ineffectual policies clearly removed the . . . notice requirement." *Id.* at 20.

Plaintiff has not met his burden to show a genuine dispute of material fact that these policies and training practices were "so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Larson*, 76 F.3d at 1454. "Simply providing a massive record does not satisfy this burden, and [the Court] will not sort through a voluminous record in an effort to find support for the plaintiff's allegations." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). As Plaintiff has presented no evidence that Sheriff Hemeyer was on notice of any persistent

8

failure of his deputies and jailers to care for sick inmates, no reasonable juror could find that a lack of training constituted an unconstitutional policy or custom at the time of Simmons's death.  Summary judgment must be granted to the County on Count I.

### B.    1983 Claims Against Hemeyer and Wray in the Official Capacities

Plaintiff sues Defendants Hemeyer and Wray in their official capacities for violations of Simmons's Eighth Amendment rights.  "A suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999); *see also Audio Odyssey, Ltd. v. Brenton First National Bank*, 245 F.3d 721, 741 (8th Cir. 2001) (A suit against the sheriff in his official capacity "is a suit against the municipality he serves."); *see also Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the violation.").  As the Court has concluded that Cole County may not be held liable for Simmons's death under 42 U.S.C. § 1983 absent a showing of some unconstitutional policy or custom, summary judgment must be granted against Hemeyer and Wray in their official capacities.

### C.    1983 Claims Against Hemeyer in his Individual Capacity

Plaintiff has not alleged any direct involvement by Hemeyer in Simmons's death, but focuses instead on Hemeyer's supervisory role in the Jail.[3]  Supervisory liability is

---

[3]It is not clear from his Suggestions in Opposition whether Plaintiff is indeed advancing a § 1983 claim against Hemeyer in his individual capacity or only in his official capacity.  However, since Hemeyer has moved for summary judgment on any individual capacity claim, the Court will rule the motion as if Plaintiff intended to bring such a claim.

extremely limited under 42 U.S.C. § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Because the doctrine of respondeat superior is unavailable in this context, a supervisor incurs liability for an Eighth Amendment violation only "when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Id.* "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Id.* (*quoting Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Thus, for Hemeyer to be liable under § 1983 in his individual capacity, he must have: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action;" and (4) such failure must have proximately caused the injury. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). As the Court has already explained, Plaintiff has presented no evidence from which a reasonable juror could find that Hemeyer had any notice of a pattern of unconstitutional acts committed by his subordinates or that he tacitly authorized such acts. Summary judgment will be granted as to Hemeyer in his individual capacity.

**D.     1983 Claims Against Wray in her Individual Capacity**

A prison official violates an inmate's Eighth Amendment right to medical care if her conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a claim of deliberate indifference, an inmate must show (1) that she suffered objectively serious medical needs

and (2) that the prison official actually knew of but deliberately disregarded those needs. *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). An intentional delay in obtaining medical care for a prisoner who needs it violates the Eighth Amendment if "a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) [are] so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." *Id.*

From the evidence before the Court, a reasonable juror could find that Wray knew that a mentally ill Simmons had been taken off all of her medication, that she progressed from discomfort and confusion during their first conversation to babbling incoherently and removing her clothing by their second conversation. The last time Wray saw her, Simmons's lips were shaking and she was unable to articulate what was wrong with her or sit unaided in an upright position. Wray asked Simmons to get dressed and go downstairs when she was obviously unable to do so and then assumed Simmons's failure to comply to be a refusal of medical treatment. The evidence also suggests that the other inmates and jailers believed Simmons was seriously ill. Under these circumstances, a reasonable person would know, at a minimum, that Simmons needed a medical assessment. Not only did Wray fail to act, Wray affirmatively told her jailers that Simmons was faking her symptoms and did not need medical attention. She then left, making no provision for changed circumstances.

Wray claims that Simmons frequently mumbled incoherently, and faked illness, but her claims in this regard lack specificity and are subject to a credibility assessment by

the jury. Thus, there are disputed issues of fact about whether Simmons had an objectively serious medical need and whether Wray was deliberately indifferent to it.

Finally, Wray asserts the defense of qualified immunity. This defense is not viable because there are disputed issues of facts, and a reasonable juror could believe that Wray was deliberately indifferent to Simmons's serious medical need. It was clearly established that such conduct violates the Eighth Amendment at the time of Simmons's death. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Summary judgment is denied.

### D. Wrongful Death Claims and the Official Immunity Doctrine

Plaintiff contends that "but for the negligence of Defendants as outlined by the records and affidavits submitted by Plaintiff, Mrs. Simmons would not have died." Sugg. in Opp. at. 24. However, under the doctrine of official immunity "public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions." *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. 1985). "Whether an act is discretionary or ministerial depends on the degree of reason and judgment required to perform the act. An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). The negligence alleged against Hemeyer involves his negligent failure to train jail officials. The negligence alleged against Wray involves her disbelief in Simmons's symptoms and her negligent failure to obtain medical treatment for Simmons. Although Plaintiff argues that providing medical treatment to

Case 2:04-cv-04042-NKL   Document 79   Filed 02/02/07   Page 12 of 14

prisoners is a ministerial function because deliberate indifference to a medical need is prohibited by the Eighth Amendment, the Court disagrees.  First, Wray's claim is based on negligence.  The Eighth Amendment does not require that non-negligent care be given to prisoners.  Second, a sheriff's decision on how to train jail officials involves "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued."  A jailer's assessment of the severity of a prisoner's medical condition and whether immediate medical attention is warranted involves a similar exercise of reason.  As the Missouri Supreme Court has explained,

> The official immunity doctrine serves an important function in our society. Courts and legal commentators have long agreed that society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business.

*Kanagawa*, 685 S.W.2d at 836.  While Wray may be found liable for violating Simmons's constitutional rights under 42 U.S.C. § 1983, she and Hemeyer are entitled to official immunity on the state law negligence claims against them.  Summary judgment will be granted on the wrongful death claims.

**III.    Conclusion**

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  The Motion is DENIED as to the § 1983 claim against Defendant Wray in her individual capacity.  The Motion is GRANTED as to all other claims.

13

s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  February 2, 2007
Jefferson City, Missouri